**IN THE COURT OF APPEALS OF IOWA**

No. 4-008 / 12-2133
Filed March 12, 2014


**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**DONALD RAY FINCH,**
　　　　Defendant-Appellant.

_____


Appeal from the Iowa District Court for Hancock County, Colleen D. Weiland (trial), and DeDra L. Schroeder (sentencing), Judges.


Donald Finch appeals from his conviction of operating while intoxicated (third offense), in violation of Iowa Code section 321J.2 (2009). **AFFIRMED.**


R. A. Bartolomei of Bartolomei & Lange, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, and Karen R. Kaufman Salic, County Attorney, for appellee.


Considered by Potterfield, P.J., and Doyle and Bower, JJ.

**POTTERFIELD, P.J.**

Donald Finch appeals from his conviction of operating while intoxicated (third offense), in violation of Iowa Code section 321J.2 (2009). He contends he was denied due process and a fair trial as a result of prosecutorial misconduct, the trial court's failure to properly admonish the jury after the prosecutor's statement in closing arguments, and the court's having allowed the use of prior testimony from a department of transportation (DOT) hearing to refresh a witness's memory. He also asserts the district court erred in denying his motion for a new trial where a juror stated she abstained from a preliminary vote because she shared the defendant's condition of sleep apnea. Finally, he argues the verdict was against the weight of the evidence. We conclude Finch was not denied a fair trial. Nor did the district court abuse its discretion in its evidentiary rulings or the denial of the defendant's motions for new trial or judgment of acquittal. We therefore affirm.

**I. Background Facts and Proceedings.**

The following facts are supported by the evidence presented at Donald Finch's trial on the charge of operating while intoxicated (OWI). At nine o'clock in the morning, on April 2, 2009, a man (later identified as Finch) was seen by a passer-by, Donna Quinby, slumped over the steering wheel of a truck, which was in the wrong lane of traffic. Quinby asked Leonard Carter, the driver of the car in which she was riding, to turn around. Quinby exited her car and banged on Finch's window, but he did not respond. Quinby told Carter to call 911. Quinby tried to see if the truck was in gear because she noticed that it was moving. She continued her attempts to get Finch's attention and pounded on the vehicle. She

tried to open the door, but it would not open. Finch's truck moved again, which led Quinby to direct an oncoming vehicle from driving in front of the pickup truck.

Finch roused when Britt Police Officer Chris Gobeli arrived on the scene and made his way to the passenger side of Finch's truck. Officer Gobeli noticed the truck was running and rolling forward. He told Finch to put the vehicle in park, which Finch did. Officer Gobeli moved around to the driver's side of the truck. Finch had difficulty lowering the driver's window and removing his license from his wallet. An open beer can was in the drink holder. Tire tracks indicated that the truck had gone into and out of the ditch.

When an ambulance arrived at the scene, emergency responder Andrew Eliason asked to take Finch's vitals. Finch said "no." Eliason asked Finch if he had diabetes or prone to seizures. Finch responded "no." Eliason observed Finch and noted he had slurred speech, bloodshot eyes, and was acting "lethargic." Eliason continued to speak with Finch and moved in closer to smell his breath to determine if he was diabetic. Eliason testified a diabetic's breath would smell fruity. Finch's breath did not smell fruity. Eliason testified he smelled alcohol.

Deputy Sheriff Steven Nelson arrived on the scene. Deputy Nelson smelled the odor of an alcoholic beverage when he approached Finch. He noted Finch's eyes were bloodshot and he had difficulty keeping his eyes open. Deputy Nelson testified Finch was "lethargic, kind of unenergetic, just sluggish." Finch told Deputy Nelson he was headed home—the deputy told Finch he was facing the wrong direction. Finch refused to perform field sobriety tests and refused to sign the implied consent form.

During the subsequent jury trial, on direct examination, Officer Gobeli testified that when he responded to the scene, Finch's diesel truck was running. On cross-examination, defense counsel impeached Gobeli's trial testimony with his testimony at a hearing on a motion to suppress held on August 31, 2010, where Gobeli testified that he could not remember if the truck's motor was running. On redirect, the State inquired as to Officer Gobeli's testimony at another hearing held on June 15, 2010.[1] The following exchange occurred:

> Q. Do you recall him [defense counsel] inquiring of you during the June hearing whether or not you recalled the engine of Mr. Finch's vehicle being running? A. Yes.
> Q. And do you recall what your answer was? A. I do not.
> Q. Would it refresh your recollection to read a transcript of that hearing to see what your answer was? A. Yes.

Defense counsel objected, stating: "I believe what they're attempting to do is not to refresh, but to put in past recollection recorded without being able to lay appropriate foundation or the need to put in past recollection recorded." The objection was overruled. After reviewing the transcript, Officer Gobeli testified, "[T]he engine was running."

The defense called Dr. Alireza Yaramadi, a neurologist and board certified sleep physician. Three months after the incident resulting in the OWI charge, Dr. Yaramadi diagnosed Finch—a forty-one-year-old obese man with a history of snoring and excessive daytime sleepiness—as having chronic, obstructive sleep apnea, which is an involuntary cessation of breathing caused by blockage of the upper airway. Dr. Yaramadi testified those with sleep apnea may fall asleep at work or while driving; that sleep apnea can affect the person's cognitive function

---

[1] The transcript was from a DOT hearing. It was not admitted into evidence.

(the ability to think and process information), memory, concentration, and information processing during waking time; and due to tiredness and fatigue, sleep apnea can affect a person's balance and fine motor skills, including speech. He suggested that symptoms of sleep apnea may not be differentiated from those of intoxication.

During closing arguments, the prosecutor stated, "While his [Finch's] emotions with the officers were very consistent, calm, he was polite, that sort of thing, with the ambulance crew when Mr. Eliason asked him a second time for his vitals, he was agitated with him." Defense counsel objected. Following the prosecutor's closing argument, the court informed the jury:

> We had a couple discussions up here at the bench and there is one comment that I'd like to make to clear something up. There is a disagreement amongst the three of us about whether Mr. Eliason's testimony may—did or did not include information about Mr. Finch being agitated when he refused treatment and assessment. In regard to that, you should rely on your recollection of the testimony and you should disregard Ms. Salic's argument in that specific regard if the evidence does not support that.

The defendant made no objections to the jury instructions. The jury was instructed that arguments by lawyers are not evidence.

The jury was also instructed the State "must prove both" of the following: "1. On or about the 2nd day of April, 2010, the defendant operated a motor vehicle. 2. At that time, the defendant was under the influence of alcohol."

An additional instruction stated:

> A person is "under the influence" when, by drinking liquor and/or beer, one or more of the following is true:
> 1. His reason or mental ability has been affected.
> 2. His judgment is impaired.
> 3. His emotions are visibly excited.

4. He has, to any extent, lost control of bodily actions or motions.

The jury found Finch guilty of OWI. The court denied defendant's post-trial motions, including a motion for new trial, in which the defendant contended the court erred in allowing Officer Gobeli's memory to be refreshed by reviewing a transcript, and that Finch had been denied a fair trial by the prosecutor's misconduct in misstating the evidence and by a juror's refusal to join in deliberations due to the juror's sleep apnea. Finch also asserted the verdict was against the weight of the evidence.

The district court explained its reasoning for denying the posttrial motions in ruling on Finch's motion to reconsider and to enlarge.

The court sentenced Finch to an indeterminate five-year term, suspending all but thirty days.

Finch now appeals, contending he was denied due process and a fair trial as a result of prosecutorial misconduct, the trial court's failure to properly admonish the jury after the prosecutor's statement in closing arguments, and the court having allowed the use of prior testimony from a department of transportation (DOT) hearing to refresh a witness's memory. He also asserts the district court erred in denying his motion for a new trial where a juror stated she abstained from a preliminary vote because she shared the defendant's condition of sleep apnea. Finally, he argues the verdict was against the weight of the evidence.

## II. Scope and Standards of Review.

We review a district court's evidentiary rulings and rulings on motions for new trial for an abuse of discretion. *State v. Elliott*, 806 N.W.2d 660, 673 (Iowa 2011) (evidentiary rulings); *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) (new trial). To the extent a claim on appeal involves constitutional issues, our review is de novo. *Simmons v. State Public Defender*, 791 N.W.2d 69, 73 (Iowa 2010).

## III. Discussion.

*A. Prosecutorial misconduct.* A defendant is entitled to a fair trial, not a perfect one. *State v. Lyman*, 776 N.W.2d 865, 875 (Iowa 2010); *State v. King*, 256 N.W.2d 1, 12 (Iowa 1977). Finch asserts that alleged misconduct by the county attorney deprived him of a fair trial. *See State v. Graves*, 668 N.W.2d 860, 867 (Iowa 2003); *DeVoss v. State*, 648 N.W.2d 56, 64 (Iowa 2002) (stating prosecutorial misconduct that denies the defendant a fair trial is a violation of due process); *see also* U.S. Const. amend. XIV.

> The initial requirement for a due process claim based on prosecutorial misconduct is proof of misconduct. Evidence of the prosecutor's bad faith is not necessary, as a trial can be unfair to the defendant even when the prosecutor has acted in good faith.
> The second required element is proof the misconduct resulted in prejudice to such an extent that the defendant was denied a fair trial. "Thus, it is the prejudice resulting from misconduct, not the misconduct itself, that entitles a defendant to a new trial." In determining prejudice the court looks at several factors "within the context of the entire trial." We consider (1) the severity and pervasiveness of the misconduct, (2) the significance of the misconduct to the central issues in the case, (3) the strength of the State's evidence, (4) the use of cautionary instructions or other curative measures, and (5) the extent to which the defense invited the misconduct.

*Graves*, 668 N.W.2d at 869 (citations omitted).

Even if we assume that the prosecutor's conceded misstatement of the testimony constitutes misconduct, we do not determine the isolated statement was sufficiently prejudicial to require a new trial. *See State v. Carey*, 709 N.W.2d 547, 554 (Iowa 2006) (concluding prosecutor's misstatement in closing argument about a mistaken knife reference, even if not made in good faith, is considered "only as bearing on the ultimate issue of prejudice"). The statement was made in final argument. Under the court's instruction, arguments of counsel were not to be considered as evidence.

As observed by the trial court in its denial of Finch's post-trial motions:

The State's sole reference in closing argument to agitation was an insignificant error, which the defendant had ample opportunity to address in his closing argument. There was no prejudice to the defendant. Additionally, this court interprets (and intended) its admonition to the jury differently than does the defendant. The court told the jury that it didn't remember any such testimony (and not that it could not remember the evidence). Nonetheless, the court instructed the jury in a widely accepted manner by reminding the jury to rely on its recollection of the evidence and give that evidence the weight and value it believes it entitled to receive.

We find no abuse of discretion.

*B. Use of prior testimony to refresh memory*. Finch argues strenuously Officer Gobeli was improperly allowed to refresh his recollection. We find no error in the trial court's allowing the witness to review his prior testimony. *See State v. Elliott*, 806 N.W.2d 660, 673 (Iowa 2011) ("Rule 5.612 allows a person to refresh his or her memory while or before testifying. Iowa R. Evid. 5.612. Once refreshed, the witness may testify as to his or her refreshed recollection subject to cross-examination.").

Finch's argument is premised on rules relating to the admissibility of hearsay. The writing with which Gobeli refreshed his recollection was not admitted into evidence; we need not decide whether the writing with which he refreshed his memory was or was not hearsay or admissible. *See*, *generally*, Iowa Rs. Evid. 5.801(d)(1)(A), .803(5).

*C. Juror Conduct.* Finch asserts that after trial—in the presence of the trial judge—his counsel spoke with the jury foreman who said a juror abstained from an initial vote because she had sleep apnea. Finch's motion for new trial alleged the juror's misconduct required a new trial. The district court denied the motion, stating:

> Contrary to defendant's assertions, it was clear to the court that the foreperson indicated that a single juror declined to vote on the "first round" because she did not want to unduly influence the opinion of the other jurors. The foreperson in no way indicated that the juror was unwilling or unable to participate in subsequent deliberations or that the juror failed to do so in good faith.

We find no abuse of discretion.

*D. Verdict was not contrary to the weight of the evidence.* Finally, Finch argues the court erred in failing to enter a judgment of acquittal on the ground the verdict was contrary to the weight of the evidence. "A verdict is contrary to the weight of the evidence where a greater amount of credible evidence supports one side of an issue or cause than the other." *Shanahan*, 712 N.W.2d at 135 (internal quotation marks and citation omitted). The district court has considerable discretion when determining a motion for new trial under the weight-of-the-evidence test. *State v. Ellis*, 578 N.W.2d 655, 659 (Iowa 1998). "Except in the extraordinary case where the evidence preponderates heavily against the

verdict, trial courts should not lessen the jury's role as the primary trier of facts and invoke their power to grant a new trial." *Shanahan*, 712 N.W.2d at 135. This is not such an extraordinary case. Finch was discovered passed out behind the wheel of his truck on the wrong side of the road. Witnesses testified he smelled of alcoholic beverage. While Finch presented testimony that he was later diagnosed with sleep apnea, the jury could rationally determine he was operating while intoxicated.

**AFFIRMED.**