# IN THE COURT OF APPEALS OF IOWA

No. 17-0335
Filed June 6, 2018

**RENARD E. ANDREWS,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Bradley M. McCall, Judge.

Applicant challenges the dismissal of his application for postconviction relief. **AFFIRMED.**

Susan R. Stockdale, Windsor Heights, for appellant.

Thomas J. Miller, Attorney General, and Kevin R. Cmelik, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MCDONALD, Judge.**

Renard Andrews was convicted of murder in the first degree, in violation of Iowa Code section 707.2 (2009), and sentenced to imprisonment for life without the possibility of parole. This court affirmed his conviction on direct appeal. *See State v. Andrews*, No. 11-1672, 2012 WL 4513901, at *1 (Iowa Ct. App. Oct. 3, 2012). Andrews now appeals the denial of his application for postconviction relief.

I.

The facts and circumstances of the offense were set forth in our prior opinion:

> LeCarlton Henderson was murdered in the early hours of November 18, 2010. From the evidence presented at trial, the jury could have reasonably found the following facts.
> On the evening of November 17, 2010, Andrews, who uses a wheelchair, was at his girlfriend's house with Olando "Maf" Hawthorne playing video games. Henderson stopped by and picked Andrews and Hawthorne up to go to a club. On their way, Henderson stopped at his girlfriend's place of work so she and Henderson could swap vehicles. Henderson, Hawthorne, and Andrews then proceeded to a bar in Henderson's girlfriend's black SUV.
> Henderson called his girlfriend around 2:00 a.m. to let her know he was on his way home. However, Andrews had Henderson drive them to an apartment parking lot. There, Andrews shot Henderson once in the mouth and once in the head. A couple in the apartment complex heard a loud noise from the parking lot around 2:45 a.m. The wife looked out the window and saw one person pushing a man in a wheelchair.
> Hawthorne pushed Andrews to a nearby grocery store. Andrews called his girlfriend at 3:15 a.m. to pick them up, telling her that Henderson had left with some women and he and Hawthorne needed ride. She then picked the pair up.
> Henderson's body was discovered later that morning in his girlfriend's black SUV in the apartment's parking lot. Henderson's girlfriend heard a report that a body had been found in an SUV, and she called Andrews to find out if he knew where Henderson was. Andrews told her Henderson had dropped him off at home the prior night and that was the last time he saw Henderson. Andrews talked to Henderson's girlfriend a few more times that morning, telling her

he had warned Henderson about "messing with all those hoes" and trying to find out what she had learned about the police investigation.

Andrews was ultimately charged with murdering Henderson, and he was arrested and placed in the Polk County Jail. Already residing there on felony charges was Derek Hoover, a friend of both Andrews and Hawthorne. Andrews told Hoover all about the murder, including that used his "40" to murder Henderson. Andrews told Hoover that Hawthorne was supposed to get rid of the gun but had poorly hidden it behind Andrews's girlfriend's garage to set Andrews up. Andrews told Hoover he had shot Henderson because Henderson had stolen from him. Hoover ultimately told the police what Andrews had told him in hopes of receiving a more favorable deal. The police found the gun where Hoover told them Andrews had told him-behind Andrews's girlfriend's garage. Blood stains matching the known DNA profile of Henderson were found on Andrews's jacket.

A jury trial was held in September 2011, and Andrews took the stand in his defense. He testified that Hawthorne had his gun, and it was Hawthorne who shot Henderson. He stated Hawthorne told Henderson to pull into a parking lot and argued about money owed from a drug transaction. Andrews testified that he had just completed a phone call and was looking through his phone when Hawthorne shot Henderson twice. He stated he lied to the police about the events that night because he was scared and because Henderson was shot with his gun.

On cross-examination, the State asked Andrews about a shooting at a bar in June 2010, where Andrews was identified as the shooter by the bar's bouncer and was quoted to have told the bouncer when leaving, "I'll kill you." The casings from that shooting matched the casings found at the murder scene. The following exchange occurred:

Q. [Your attorney] asked you about this gun, and you said that was your gun; right? A. Yes, sir.
Q. You had it with you when you shot up the [bar], didn't you? A. I plead the Fifth.

Andrews's attorney objected and moved for a mistrial. The district court overruled the objection and the motion, and it ordered Andrews to answer the question. The following exchange occurred:

Q.... I asked you if you had admitted ... that [the] Smith & Wesson .40–caliber[ ] was your gun. And it is your gun; right? A. Yes, sir.
Q. And then I asked you if that was not the same gun that you had used at the [bar] or fired at the [bar]. Remember the question? A. Yes, sir.
Q. All right. Well, it was the same gun, wasn't it? A. Yes

The jury ultimately found Andrews guilty of first degree murder.

*See id.* at *1–2.

In his application for postconviction relief, Andrews raised four claims of ineffective assistance of counsel. He claimed his trial counsel provided constitutionally deficient representation in cross-examining a particular witness and in giving Andrews bad advice regarding the invocation of his privilege against self-incrimination. He claimed his appellate counsel provided constitutionally deficient representation in failing to better challenge the admissibility of the testimony regarding the prior bar shooting and in failing to better challenge the cautionary instruction given with respect to the same. The district court rejected the application. Andrews timely filed this appeal.

## II.

This court reviews ineffective assistance claims de novo. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). To establish a claim of ineffective assistance of counsel, Andrews must prove by a preponderance of the evidence "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Id.*; *see State v. Madsen*, 813 N.W.2d 714, 723 (Iowa 2012). "Prejudice exists if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Madsen*, 813 N.W.2d at 727. "A 'reasonable probability' means a 'substantial,' not 'just conceivable,' likelihood of a different result." *Id.* The failure to prove either element is fatal to the claim. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003).

## A.

In his first claim, Andrews contends trial counsel was ineffective in failing to question witness Martha Lucero about the clothing she saw Andrews wearing the

night of the murder. Ms. Lucero lived in an apartment complex near the crime scene. On the night in question, she heard a loud noise and looked out the window. In her pretrial deposition, Lucero testified she saw two men leaving the SUV. One of the men was pushing the other in a wheelchair. In her deposition, Lucero said the man pushing the wheelchair was wearing a red jacket. According to her deposition, it was thus Hawthorne, and not Andrews, who was wearing the red jacket immediately after the shooting. At trial, the evidence showed the red jacket had blood on it, and the blood matched the victim. At trial, however, Andrews' trial counsel failed to elicit testimony from Lucero regarding the red jacket.

Andrews has failed to establish a breach of duty. Here, counsel made an informed and strategic decision to not ask Lucero about the jacket. *See State v. Ondayog*, 722 N.W.2d 778, 786 (Iowa 2006) ("[W]e will not reverse where counsel has made a reasonable decision concerning trial tactics and strategy, even if such judgments ultimately fail."). It was clear from the totality of the evidence that Lucero's recollection was incorrect and there was no reason to press her on the issue. Video surveillance evidence showed Andrews in the jacket. Andrews admitted to police he was wearing the red jacket. Andrews' girlfriend testified Andrews was wearing the red jacket. She retrieved the jacket for the police. In addition, it was consistent with Andrews' theory of the case to admit he was wearing the red jacket during the shooting. Andrews' theory of the case was he was in the front seat of the vehicle at the time Hawthorne shot Henderson from the back seat. It was necessary for Andrews to admit he was wearing the red jacket at the time of the shooting because it explained the presence of blood splatter on

the red jacket and the absence of any blood evidence on the white shirt he was wearing underneath the jacket. Because trial counsel did not breach any duty, we need not address prejudice. *See Graves*, 668 N.W.2d at 869.

B.

Next, Andrews argues trial counsel was ineffective in advising him to 'plead the fifth' if asked about the bar shooting. In his postconviction-relief application, Andrews argued he was prejudiced by his attempted invocation of the Fifth Amendment on the stand for the following reason:

> Most people are familiar with the Fifth Amendment through their experience of reading legal thrillers, viewing courtroom and police dramas on TV and at the movies, and through similar experiences on the internet. Almost always, the person invoking the Fifth is guilty. Most people, including people who serve on juries, therefore equate invoking the Fifth with guilty.

The State contends this assertion is insufficient to prove prejudice. The State also points out that Andrews raised a similar argument on direct appeal, which was denied.

Andrews has not established prejudice. *See Madsen*, 813 N.W.2d at 727. The evidence in the murder case was overwhelming. Andrews admitted to committing the murder to Hoover. The confession was corroborated when the police found the murder weapon where Hoover said it would be. There was DNA evidence on the red jacket, which Andrews admitted he wore the night in question. Eyewitnesses saw a man in a wheelchair, like Andrews, being pushed away from the scene of the crime. This court reached a similar conclusion while conducting harmless error analysis on direct appeal:

> Even assuming without deciding Andrews's Fifth Amendment right against self-incrimination was violated when he was required to

answer the question about his prior bad act, we find the error was harmless. Here, omitting Andrews's admission to the prior shooting, the jury clearly considered in reaching its verdict the facts set forth in detail above, including evidence Henderson was shot with Andrews's gun, Andrews lied to the police about the events of the evening, his jacket had blood stains matching Henderson's DNA, and Hoover's very specific and detailed testimony. Furthermore, the jury heard testimony from the bar's bouncer and Hoover that Andrews had shot up the bar earlier in the year with his gun.

*Andrews*, 2012 WL 4513901, at *5. While the harmless-error standard is different than the constitutional-prejudice standard, the analysis is illustrative. Even assuming counsel breached a duty in advising Andrews he could invoke the Fifth Amendment, there is no constitutional prejudice.

C.

In his third and fourth claims, Andrews argues appellate counsel was ineffective in failing to correctly characterize Andrews' argument about the admissibility of the evidence of the prior bar shooting and in failing to challenge the particulars of the cautionary instruction given related to the same evidence. The State responds Andrews is simply repackaging the same claim he raised on direct appeal and, in any event, Andrews suffered no constitutional prejudice.

"To prove appellate counsel's deficient performance resulted in prejudice, the applicant must show his ineffective assistance of trial counsel claim would have prevailed if it had been raised on direct appeal. Thus, before we can determine whether error has been preserved, we must analyze the merits of [the applicant's] ineffective assistance of counsel claims." *Ledezma v. State*, 626 N.W.2d 134, 141–42 (Iowa 2001).

We agree with the State that these claims were presented and resolved on direct appeal and are now barred. *See Holmes v. State*, 775 N.W.2d 733, 735

(Iowa Ct. App. 2009) ("The first three issues identified above, although two are expressed as claims of ineffective assistance of counsel, are in effect direct attacks on this court's holding on direct appeal. Under our rules of appellate procedure, Holmes's remedy was to seek further review of our decision from our supreme court. He did so and review was denied. Our decision on direct appeal is thus final as to all issues decided therein, and is binding upon both the postconviction court and this court in subsequent appeals."); *see also* Iowa Code § 822.8 ("Any ground finally adjudicated . . . in the proceeding that resulted in the conviction or sentence . . . may not be the basis for a subsequent [postconviction relief] application.").

### III.

Andrews raises several additional claims in his pro se brief. We address each in turn.

### A.

Andrews raises several challenges to his conviction that were not presented to the postconviction court or resolved by the postconviction court. Specifically, Andrews argues: (1) the trial court erred in requiring him to answer a question after he attempted to invoke the Fifth Amendment; (2) the indictment in this case was faulty because it did not set forth all of the elements of murder in the first degree; (3) this case was used to convict him of the prior bar shooting, which was not charged in the indictment; (4) some of the jury instructions in this case were improper; and (5) there was insufficient evidence to support his conviction.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on

appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). Andrews did not raise these claims before the postconviction court. Thus, the issues are not preserved for appellate review. We need not address these claims further.

B.

Andrews challenges the conduct of proceedings in the postconviction action. He contends the postconviction court erred in failing to address his pro se claims. We disagree. Andrews' claim is belied by the record and does not entitle him to any relief. *See State v. Wise*, 708 N.W.2d 66, 71 (Iowa 2006) (concluding the defendant was not entitled to postconviction relief on claim of involuntariness where the claim was contrary to the record). Andrews raised several pro se claims in multiple applications for postconviction relief. At the time of the postconviction trial, Andrews' counsel clarified for the district court that Andrews sought relief only on the four specific claims identified in Division II of this opinion. Postconviction counsel affirmed this on the record during trial: "And, Renard, please correct me if I'm wrong, but we agreed to limit the [postconviction-relief action] to those four issues; is that correct?" Andrews responded, "Yes." There is nothing in the record showing the district court prevented Andrews from raising claims or otherwise ignored the claims Andrews raised.

C.

Andrews challenges the conduct of his postconviction counsel. Andrews argues his postconviction counsel was ineffective in not raising all the issues Andrews requested, not working with Andrews, not giving Andrews his criminal file, not providing the work of an appointed expert at the postconviction relief hearing,

and not doing the proper investigation of the case, among other things. None of the claims entitles Andrews to any relief.

"There is no constitutional right to postconviction relief, postconviction counsel, or the effective assistance of postconviction counsel." *See Giambo v. State*, No. 16-2032, 2017 WL 6516785, at *4 (Iowa Ct. App. Dec. 20, 2017) (McDonald, J., dissenting). "With respect to a claim of ineffective assistance of postconviction counsel raised on appeal from an adverse judgment in a postconviction-relief proceeding, to the extent such a claim can be 'preserved' for subsequent rounds of postconviction-relief proceedings, the applicant is still required to make a particularized showing of a viable claim." *See id.* (citing *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994)). Andrews has not made the required showing. His accusations are very general and do not establish a colorable claim of any breach of duty. In addition, Andrews fails to allege, let alone demonstrate, any prejudice. In the absence of any showing of a colorable claim of breach and prejudice, Andrews is not entitled to any relief.

IV.

For these reasons, we affirm the dismissal of Andrews' application for postconviction relief.

**AFFIRMED.**