# IN THE COURT OF APPEALS OF IOWA

No. 17-1729
Filed October 10, 2018

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**RICKY LEON RIDDLE,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Lee (South) County, Michael J. Schilling, Judge.

The defendant appeals from his conviction of intimidation with a dangerous weapon with intent. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Zachary C. Miller, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Ricky Riddle appeals from his conviction after a jury verdict of intimidation with a dangerous weapon with intent, a class "C" felony. He contends the district court abused its discretion when it allowed into evidence a recording of a jailhouse phone call of Riddle calling the State's main witness. Additionally, Riddle claims he was denied effective assistance because his trial counsel did not object to the prosecutor's inflammatory statements, which amounted to prosecutorial error, during closing arguments.

**I. Background Facts and Proceedings.**

In June 2017, Riddle was charged by trial information with intimidation with a dangerous weapon with intent, in violation of Iowa Code section 708.6 (2017). It was alleged Riddle had, "with the intent to injure or provoke fear in another, sho[]t or discharge[d] a dangerous weapon at or into a vehicle occupied by another person."

A jury trial took place in August. At it, the complaining witness, who was the on-again, off-again girlfriend of Riddle for the previous twenty years, testified that in the early morning hours of Wednesday, May 17, she was driving her father's car around town because she was bored. As she got near a specific intersection, she noticed Riddle standing under a streetlight, wearing a shirt she had bought him. She testified at that point in their relationship, they "were fighting. [They] had been fighting a lot." Because he looked angry when she saw him, she wanted to leave without talking to him. She testified he started coming toward her vehicle, so she put it in reverse and began to drive away. At about the same time, Riddle "pulled the gun out and started shooting towards the car." Then, while still driving away

from Riddle, she heard a hissing noise. As she continued to drive away, the witness called the police and reported the incident; during the call, she identified Riddle as the shooter.

During the drive, the witness realized that the front, driver-side tire had gone flat. An officer responded at 2:58 a.m. The police later inspected the tire: they found a hole in it and, once they had removed it from the rim, pieces of shrapnel loose inside the tire. Officers also later located a shell casing in the general area the shooting had occurred according to the description of the complaining witness.

The witness testified she resumed her relationship with Riddle after the incident and continued to have contact with him while he was in jail for the offense. Without objection, the following exchange occurred during direct examination of the complaining witness:

> Q. Do you remember a telephone call that occurred where he discussed that he was going to have a jury trial in this case? A. Yes.
> Q. Did he encourage you to duck and dodge to avoid the authorities? A. I think he had said something about it, yeah. I had told him that I was going to try to keep low—I don't—
> Q. Do you remember telling him you had your running shoes on and they were laced up? A. Yeah.
> Q. What did you mean by that? A. We were talking about ducking and dodging.
> Q. The cops? A. For the subpoena, yeah.
> Q. Okay. So Mr. Riddle was encouraging you to avoid subpoena process, wasn't he? A. Well, yeah, he—Yeah.
> Q. Do you remember him telling you that the only way he'd win this case is if witnesses wouldn't show up? A. I don't remember that but—(Witness nods in the affirmative.)

Another witness, who lived near the intersection the complaining witness testified the shooting occurred, testified that she heard a gunshot on the night in question. She believed she heard the shot sometime before 2:00 a.m.

Later, the State moved to admit a recording of the phone call between Riddle and the complaining witness, which contained the conversation described in the testimony of the complaining witness. Riddle objected, arguing that the taped conversation was not relevant, was more prejudicial than probative, and that it was improper evidence of prior bad acts. The State responded that the conversation was evidence of consciousness of guilt. The court overruled Riddle's objection, and the recorded jailhouse conversation was played for the jury.

Riddle called two witnesses as part of his defense. Each testified that the three of them—both female witnesses and Riddle—were together at the home of one of the witnesses from the evening of Sunday, May 14 until the evening of Wednesday, May 17. The home was approximately five miles from the location where the complaining witness testified the shooting occurred. The females had picked Riddle up and driven him to the home, so he did not have a vehicle to use during the four days he was staying with the women.

During closing arguments, the State contrasted the alibi testimony with the jailhouse conversation between Riddle and the complaining witness, stating in part:

> Now, he brought two witnesses in here and tried to tell you— They tried to tell you he was someplace else; he couldn't have committed this act. He supposedly spent four days out [at the witness's address] with these two ladies that came in here and testified.
> . . . [T]he Court said if you have a reasonable doubt the defendant was present at the time and place of the alleged crime, you should find the defendant not guilty. The fact that these ladies came in and gave him an alibi does raise a doubt, okay? There are two conflicting statements like we talked about in jury selection. So your job . . . is to use your common sense and experience, the tools that you use every day in making decisions, to determine which version is more believable.

And the State submits that [the complaining witness's] testimony is the more believable version, the more reasonable version, based on the evidence. Again, the physical evidence and the photographs corroborate her testimony. If her testimony is not true, what happened over there at [the intersection]? I think it's clear that her tire was shot. Did someone else do it? Is it reasonable to assume she didn't recognize the guy she had been with off and on for 20 years? She bought him the shirt he was wearing when he approached her vehicle.

But, ladies and gentlemen, why did somebody call the chief witness in regard to a criminal case and tell them to duck and dodge the authorities, tell them not to answer the phone? Why does an individual who has an ironclad alibi, who had nothing to do with this case, tell the chief witness, well, unless the witnesses don't show up, it's probably the only way I'm going to win this thing?

What does that tell you about his state of mind regarding this incident? It's an admission. It shows a consciousness of guilt. He is guilty, ladies and gentlemen, beyond a reasonable doubt.

I want you to listen to that phone call with me, just an excerpt of what we played.

(Whereupon the recording was played for the jury.)

When they pin point your phone, you're not going to answer it; you're going to have to duck and dodge.

Is that somebody without a consciousness of guilt? Is that somebody who has an alibi he was someplace else? Is that reasonable?

Ladies and gentlemen, when you get back to the jury room, I want you to fill out verdict form number one. He's guilty as charged. And then I want to you answer the interrogatory in the affirmative because there's no reasonable doubt that he used a firearm when he used a dangerous weapon in this case. . . . The only real question up in the air is who done it.

And the alibi witnesses say that the defendant was with them and [the complaining witnesses] says the defendant did it. And defendant's telling [the complaining witness] to duck and dodge the authorities, not to participate in this trial. If he doesn't have any exposure, why is he telling her that?

During Riddle's closing argument, he urged the jury to focus on the differing statements regarding what time the shot was fired. The parties stipulated that one of the officers responded to the 911 call at 2:58 a.m., while the local woman who heard the gunshot testified it occurred before 2:00 a.m. Riddle raised questions

about what the complaining witness was doing between 2:00 a.m. and the time the 911 call was made.

In the State's rebuttal, the prosecutor stated:

[Defense counsel] makes several suggestions, theories, thankfully it didn't include the Easter bunny.

. . . .

First of all, there's no time gap. That's not real. There's no evidence to that effect. You're not allowed, under these instructions, to speculate about stuff that's not in the record, okay? You're confined to evidence, and that's defined in Instruction 6. And that's just a tactic of a desperate defendant reaching out for help, to consider stuff not in the record.

The jury found Riddle guilty of intimidation with a dangerous weapon with intent. He was later sentenced to a term of incarceration not to exceed ten years.

Riddle appeals.

## II. Discussion.

### A. Phone Call.

Riddle maintains the district court should not have allowed the State to play for the jury the jailhouse phone call between Riddle and the complaining witness.[1] He argues the evidence is irrelevant to the charge levied against him, is more prejudicial than probative, and constitutes improper evidence of prior bad acts. *See, e.g.*, *State v. Putman*, 848 N.W.2d 1, 9–10 (Iowa 2014). We generally review evidentiary rulings for an abuse of discretion. *See State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013).

---

[1] Riddle also argues this claim in the alternative under the ineffective-assistance framework if we find error is not preserved. The State concedes error was preserved, and we do not disagree. We need not reach Riddle's alternative claim.

Over Riddle's objection, the State was allowed to play for the jury a recording of a phone call between Riddle and the complaining witness. The call took place while Riddle was in jail awaiting trial on the charge. During the call, Riddle told the witness, "[U]nless people don't show up there . . . that's probably the only way I'm going to win." He also encouraged her to "duck and dodge" to avoid being subpoenaed to testify. At the time the recording was introduced into evidence, the complaining witness had already testified to substantially the same conversation without objection from Riddle.

Because Riddle's arguments regarding relevance and unfair prejudice are also part of the analysis for the admission of prior-bad-acts evidence, we consider his arguments about the admission of the phone call under the prior-bad-acts framework. For prior-bad-acts evidence to be admitted, the evidence must be (1) relevant to a legitimate, disputed factual issue, (2) supported by clear proof that the person against whom the evidence is offered committed the prior bad act, and (3) the danger of unfair prejudice does not substantially outweigh the probative value. *Id.*

First, we consider Riddle's assertion that the phone call was not relevant. Riddle maintains the recording is not relevant because his telling the witness not to testify does not make it any more likely he was the person who shot at her car. He asserts the statement was not an admission and argues that rather than showing a consciousness of guilt, as the district court found, the statement could have been "an assessment of the strength of the State's case" or "motivated by distrust of the criminal justice system."

While we understand the distinction which Riddle argues, our case law provides that "[a]dmissions may be implied by the conduct of the defendant subsequent to a crime . . . when such conduct indicates consciousness of guilt." *State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993). In *State v. Campbell*, No. 10-0117, 2013 WL 4011071, at *1 (Iowa Ct. App. Aug. 13, 2013), our court was asked to consider whether jailhouse phone calls between the defendant and the complaining witness, where the defendant urged the complaining witness to "leave her apartment and hide elsewhere to avoid being subpoenaed," constituted evidence of consciousness of guilt. We determined the defendant's actions of urging the witness to be unavailable to testify against him was an implied admission and found the recordings "were admissible as substantive evidence of [the defendant's] consciousness of guilt." *Campbell*, 2013 WL 4011071, at *7. We see no reason to reach a different result here, especially as we believe Riddle's statement that he would be convicted unless the complaining witness did not testify raises questions about his own belief regarding the credibility of his alibi defense. Thus, the jailhouse phone call was relevant to the identity of the perpetrator in the charge against Riddle.

Because Riddle does not dispute that the recording constitutes clear proof he made the phone call, committing the prior bad act, we next consider whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to him. *See* Iowa Rs. Evid. 5.403, 5.404(b); *see also Putman*, 848 N.W.2d at 9 (considering unfair prejudice under rule 5.403 within the prior-bad-acts analysis). Because identity was the only disputed issue at trial, and the evidence in question—as evidence of consciousness of guilt—was directly on

point, the evidence has great probative value. In weighing whether that probative value is substantially outweighed by the danger of unfair prejudice, we focus on "the strength or weakness of the evidence on the relevant issue, and the degree to which the fact finder will be prompted to decide the case on an improper basis." *Putman*, 848 N.W.2d at 9–10 (citation omitted).

The recording of the phone call constituted strong evidence Riddle had committed the prior bad act of encouraging the complaining witness to "duck and dodge" the police in order to escape testifying. The substance of the call was relevant to the identity of the shooter, which was important, as the jury had to determine the credibility of two directly competing narratives—an identification by the State's complaining witness or alibi witnesses who testified they were certain Riddle was five miles away at the time of the incident. While Riddle did not request, and the district court did not provide, an instruction advising the jury that it could not consider the prior bad acts to prove Riddle's character, *see State v. Rodriguez*, 636 N.W.2d 234, 243 n.2 (Iowa 2001), this is not the type of evidence likely to "stir such passion in the jury as to sweep them beyond a rational consideration of guilt or innocence of the crime on trial." *State v. Wright*, 203 N.W.2d 247, 251 (Iowa 1972).

Based upon our consideration of these factors, we cannot say the district court abused its discretion when it determined the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice and admitted the phone call. *See Putman*, 848 N.W.2d at 9 ("Weighing probative value against prejudicial effect 'is not an exact science,' so 'we give a great deal of leeway to the trial judge who must make the judgment call.'" (citation omitted)).

The district court did not abuse its discretion in allowing the State to admit and play for the jury a phone call between Riddle and the complaining witness.

**B. Prosecutorial Error.**

Riddle asserts that the State's attorney committed prosecutorial error during the rebuttal closing argument, when he referenced the Easter bunny while discussing defense counsel's closing statement and when he referred to the questions about the different timelines in the testimony as "a tactic of a desperate defendant reaching out for help." He claims counsel provided ineffective assistance because she did not object to the statements made by the prosecutor.

Because Riddle raised the claim of prosecutorial error under the framework of ineffective assistance, "our first step is to assess whether the record demonstrates, as a matter of law, the existence or absence of a meritorious due process violation." *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). "Thus, we must consider whether the prosecutor was guilty of misconduct[2] in the particulars identified by [the defendant] and whether the record shows [the defendant] was prejudiced, i.e., denied a fair trial." *Id.* If Riddle is able to establish both elements of his due process claim, he "will have proved that the assertion of such claim at the time of the prosecutor's misconduct would have had merit." *Id.* at 870. Only then do we proceed to consider whether Riddle's claim can meet the requirements of ineffective assistance. *See id.*

---

[2] Claims relating to a prosecutor's behavior at trial have historically been referred to as prosecutorial misconduct. However, our supreme court adopted a distinction "between incidences of prosecutorial error and prosecutorial misconduct" and noted "[a] prosecutor who has committed error should not be described as committing misconduct." *State v. Schlitter*, 881 N.W.2d 380, 393–94 (Iowa 2016). We apply the same multi-factor test outlined in *Graves* either way. *Id.* at 394. Thus, as Riddle has characterized the statements as prosecutorial error, we do the same.

"If it is determined defense counsel failed to raise a meritorious issue, we must then consider whether an attorney performing within the range of normal competency would have made an objection and/or requested a mistrial." *Id.* "If there is no possibility that trial counsel's failure to act can be attributed to reasonable trial strategy, then we can conclude the defendant has established that counsel failed to perform an essential duty." *Id.* "If trial counsel's conduct might be characterized as a reasonable trial tactic, then [the] ineffective-assistance claim must be preserved for trial in a possible postconviction relief action." *Id.* "[S]hould the defendant's claim survive to this point, [we] assess whether the record permits a determination of the prejudice prong of the ineffective-assistance claim." *Id.*

We must consider each of the comments Riddle complains of to determine whether his claim has merit. In doing this, we note that both comments took place during closing argument and are guided by "the principle that, 'in closing arguments, counsel is allowed some latitude.'" *State v. Carey*, 709 N.W.2d 547, 554 (Iowa 2006) (altered for readability).

In regard to the prosecutor's comment about the Easter bunny, the comment does not rise to the level of prosecutorial error. Error occurs "when the prosecutor seeks [to tarnish the defendant's credibility or boost that of the State's witnesses] through unnecessary or overinflammatory means that go outside the record or threaten to properly incite the passions of the jury." *Id.* at 556. We do not disagree that the statement appears to be snide or sarcastic, but "[j]urors . . . are sophisticated enough not to be inflamed or prejudiced by what would reasonably be categorized as simply being snide or sarcastic comments." *Id.* at 557. Especially when we consider that the comment was made during closing

argument. *See id.* at 555 (noting three comments that were "sarcastic and snide . . . did not constitute misconduct, given the considerable latitude given to lawyers in final arguments"). Moreover, the comment appears in a less harsh light when read in conjunction with defense counsel's closing, in which she used a metaphor for reasonable doubt that involved a mouse and a cat being placed in a box. Because the statement did not constitute prosecutorial error, it did not violate Riddle's right to due process. *See Graves*, 668 N.W.2d at 869.

Next, we consider the prosecutor's comment that discussion about the time gap was "just a tactic of a desperate defendant reaching out for help." Here, even if we found the State's characterization of the defense's argument of the disputed timeline of events amounted to prosecutorial error, we cannot find Riddle was prejudiced by the statement. *See id.* at 879 (noting it is improper to refer to defense counsel's argument as a smoke screen or sham); *but see State v. Schneider*, No. 14-1113, 2015 WL 2394127, at *7 (Iowa Ct. App. May 20, 2015) (finding the prosecutor's characterization of the defense's argument as "smoke and mirrors and crazy" did not constitute misconduct because "[t]he prosecutor's comments . . . were directed to the theory of the defense and not at defense counsel). In determining whether Riddle suffered prejudice as a result of an improper comment, we consider, "(1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct." *Graves*, 668 N.W.2d at 877.

As Riddle concedes, the conduct was limited. *See State v. Coleman*, 907 N.W.2d 124, 141 (Iowa 2018) (finding that a "few isolated comments" "w[ere] isolated, not severe or pervasive"). And while the defense presumably pointed out the inconsistencies in the timeline of events in an attempt to raise questions about the credibility of the complaining witness, the timeline itself was not an issue at trial. The sole issue in dispute was the identity of the perpetrator; whether the shooting happened before 2:00 a.m. or closer to 3:00 a.m., Riddle had an apparent alibi for either time. The State's evidence was strong, insofar as the jury found the complaining witness more credible than Riddle's alibi witnesses. The complaining witness had been in a relationship with Riddle off and on for twenty years. She testified he was within four feet of her in her vehicle trying to get to her door immediately before she put the car in reverse and he began shooting. And finally, although Riddle did not ask for and the court did not provide a curative instruction directly related to the prosecutor's comment, the jury was instructed as part of the routine instructions, that "[s]tatements, arguments, questions and comments by the lawyers" were not evidence. *But see Graves*, 668 N.W.2d at 881 (discounting the efficacy of the cautionary instructions customarily included in criminal cases to act as a curative measure in cases of prosecutorial error).

Because Riddle has not established that he was prejudiced by the prosecutor's characterization of defense's closing argument, no due process violation occurred. Thus, we cannot say counsel provided ineffective assistance. *See id.* at 870 ("Finally, [only] if both elements of [the defendant's] due process claim are established as a matter of law, [he] will have proved that the assertion of such a claim at the time of the prosecutor's misconduct would have had merit.").

We affirm Riddle's conviction without preserving his ineffective-assistance claim. *See id.* ("If either element is lacking, we affirm the conviction without preserving.").

**III. Conclusion.**

The district court did not abuse its discretion when it admitted into evidence a recording of a phone call between Riddle and the complaining witness. Additionally, because Riddle has not established a due process violation resulting from the prosecutor's statements in closing argument, his claim of ineffective assistance cannot succeed. We affirm.

**AFFIRMED.**