# IN THE COURT OF APPEALS OF IOWA

No. 19-0601
Filed August 5, 2020


**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CLETIO R. CLARK,**
    Defendant-Appellant.
_____


Appeal from the Iowa District Court for Webster County, Thomas J. Bice,

Judge.

Cletio Clark appeals his conviction of robbery in the first degree.

**AFFIRMED.**


Shawn Smith of The Smith Law Firm, PC, Ames, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.


Considered by Tabor, P.J., and May and Greer, JJ.

**MAY, Judge.**

Someone robbed the Applebee's restaurant in Fort Dodge. The State charged Cletio Clark for the crime. A jury found Clark guilty of robbery in the first degree. In this direct appeal, Clark claims error by the district court as well as ineffective-assistance of counsel. We affirm.

**I. Factual Background**

We summarize the evidence in a light favorable to the verdict.

Clark was friends with Diego Cordoba. On the evening of September 29, 2018, Cordoba and Clark hung out. They drank some Hennessy and watched movies. Later, they drove around Fort Dodge. Clark told Cordoba he was "going to bust a move." Clark told Cordoba he was "going to go in" Applebee's and "[g]et some money." Cordoba knew this meant Clark was going to commit a robbery. Clark asked Cordoba to borrow his Glock 26, a small 9mm handgun. Cordoba loaned him the gun. Cordoba dropped Clark a half block from Applebee's.

Meanwhile, Applebee's hospitality manager, Miles Alcazar, was helping close the restaurant. Around 1:34 a.m., Alcazar took a smoke break. He noticed the gate by the Applebee's dumpsters was open. When he went over to close it, he noticed a man wearing a mask, later identified as Clark, kneeling nearby. Alcazar tried to get back inside, but Clark detained him. Clark aimed the handgun at Alcazar. Clark pulled Alcazar behind the dumpster and forced him to remain on the ground for five minutes.

At about 1:40 a.m., Clark led Alcazar into Applebee's through the backdoor. They walked through the kitchen to the office. Clark took over $4000 and stuffed

it in a bright blue bag.  Then Clark fled.  As Clark ran back through the kitchen, he slipped.  His hand touched a white box on the wall.

Clark and Cordoba had agreed that Clark would call when he needed to be picked up.  So at 1:43 a.m., Clark called Cordoba.  Cordoba picked Clark up in the same area where he had dropped him off.  Clark returned the Glock 26 to Cordoba.  Clark had a bag tucked into his waistline.

Later, Cordoba and Clark drove to Des Moines.  One of Cordoba's friends rented a room at the West Des Moines Marriott.  Clark stayed in the room while Cordoba and the friend went to her house.  Cordoba later returned and left with Clark.

When a housekeeper cleaned the hotel room following Clark's stay, she found a magazine for a Glock 26 pistol.  And ten days after the robbery, Clark posted a photo of himself displaying a wad of cash in a hotel room.  It looked like the Marriott room.

Back at Applebee's, Alcazar called police after Clark fled.  He provided police a description of the robber that matched Clark.  Police lifted a fingerprint off of the white box that Clark had touched as he fled the scene.  A fingerprint expert compared it with Clark's known fingerprint.  The expert concluded the same person made both prints.

The State charged Clark with first-degree robbery.  Clark filed a notice listing Cordoba as an alibi witness.  Later, Clark filed an amended notice removing Cordoba as a witness.

At trial, the State called Cordoba. Cordoba testified that Clark planned to rob Applebee's, he transported Clark to Applebee's, he loaned Clark the Glock 26, and he picked Clark up after the robbery.

The jury found Clark guilty of robbery in the first degree. This appeal followed.

## II. Standard of Review

We apply different standards to the different issues raised in Clark's briefs. "Trial courts have broad discretion in ruling on claims of prosecutorial misconduct and we review such rulings for an abuse of discretion." *State v. Plain*, 898 N.W.2d 801, 810 (Iowa 2017) (citation omitted). But we apply de novo review to constitutional issues, including claims of ineffective assistance of counsel. *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019).

## III. Analysis

### A. Prosecutorial Misconduct

Clark claims the State committed prosecutorial misconduct by drawing attention to problems in Clark's alibi defense, effectively shifting the burden of proof to Clark, and essentially challenging Clark's constitutional right against self-incrimination. We conclude Clark has not shown reversible error.

To explain why, we begin with a review of Clark's efforts on the issue of his alibi. As noted, Clark initially filed a notice listing Cordoba as an alibi witness. He later filed an amended notice removing Cordoba as a witness. His amended notice made clear, however, that he "intend[ed] to offer his presence at the Courtyard Marriott at Jordan Creek" in West Des Moines "on the night of the crimes alleged in this case as evidence of his innocence." Then, in opening statements, Clark's

counsel told the jury: "I expect that you're going to hear that on the evening of the 29th of September, morning of 30th of September, [Clark] was in Des Moines recording music." And Clark obtained an alibi instruction. In closing arguments, counsel pointed to evidence that Clark had been "up doing music in Des Moines." And counsel argued *it was Cordoba* who committed the robbery. Then "he met up" with Clark, "who was already in Des Moines recording," counsel argued.

With this backdrop in mind, we turn to Clark's argument on appeal. Clark claims the prosecutor committed misconduct by (1) asking Cordoba if he had spoken with defense counsel; (2) asking Cordoba if he knew defense counsel had listed him as an alibi witness; (3) pointing out in rebuttal that Clark had listed Cordoba as a defense witness and then later withdrew him; and (4) pointing out that Cordoba could have testified and lied for Clark if he wanted to.

"Prosecutorial misconduct" has specialized meaning. *State v. Schlitter*, 881 N.W.2d 380, 393 (Iowa 2016). "Prosecutorial misconduct includes those statements 'where a prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct,' as well as 'those situations where a prosecutor recklessly disregards a duty to comply with an obligation or standard.'" *Id.* at 394 (citation omitted).

Defendants asserting a prosecutorial misconduct claim must first establish some error occurred. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). Then the defendant must establish the error denied them[1] a fair trial. *See id.* To determine whether the defendant was denied a fair trial, we consider five factors:

---

[1] This opinion will use "they" and "them" as gender neutral pronouns.

"(1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the misconduct." *Id.* (citations omitted).

Viewing the record as a whole, we have some concern as to whether the prosecutor's statements effectively shifted the burden to Clark to prove his innocence through establishment of his alibi. Even assuming the prosecutor committed some misconduct, however, we can reverse only if the misconduct denied Clark a fair trial.

Considering the *Graves* factors, we agree with the State that Clark received a fair trial. The prosecutor's references were, as the State describes them, "relatively benign" in the grand scheme of the proceedings and were unlikely to stand out in the jury's minds. And the jury instructions made clear (1) Clark had a right not to testify and his choice not to testify could not be held against him, (2) the prosecutor's statements were not evidence, and (3) the burden of proof rested with the State. We presume the jury followed those instructions, alleviating any concern the jury might expect Clark to establish his innocence. *See State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010) ("We presume juries follow the court's instructions.").

Also, the State's case was very strong. Although Clark denied ever being in the Applebee's kitchen, Clark's fingerprint was discovered on a white box in the Applebee's kitchen. It was the same white box that—according to surveillance footage—the robber touched on his way out. Plus Alcazar's description of his assailant matched Clark. And Cordoba testified he loaned his Glock 26 to Clark,

he knew Clark was going to rob the Applebee's, he dropped Clark off a short distance from the restaurant, and he picked him up in the same location a short while later. And the Applebee's surveillance footage showed the robber with a gun consistent with Cordoba's Glock 26. Plus a housekeeper found a Glock 26 magazine after Clark stayed in a hotel room on the night of the robbery. Then, less than two weeks after the robbery, Clark posted a photo to social media showing him in a hotel room—a room that looked like the one he stayed in the night of the robbery—holding a large sum of cash. Viewing the record as a whole, we think the State is right to say it "produced overwhelming evidence against Clark."

So even assuming the prosecutor committed some misconduct, we still conclude Clark received a fair trial. And so Clark is not entitled to relief.

## B. Ineffective assistance of counsel

Clark also claims we should reverse because his counsel was ineffective. "To establish [a] claim of ineffective assistance of counsel," the defendant must show their "trial counsel failed to perform an essential duty and counsel's failure resulted in constitutional prejudice." *State v. Walker*, 935 N.W.2d 874, 881 (Iowa 2019). "The [defendant] must prove both elements by a preponderance of the evidence." *State v. Madsen*, 813 N.W.2d 714, 724 (Iowa 2012).

To establish breach of an essential duty, the defendant must prove counsel "perform[ed] below the standard demanded of a reasonably competent attorney." *State v. Haas*, 930 N.W.2d 699, 703 (Iowa 2019) (citation omitted). In considering these "claims, we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (citation

omitted). So "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citation omitted).

"To establish constitutional prejudice, the defendant is required to show 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Walker*, 935 N.W.2d at 881 (citation omitted). "It is not enough for the defendant to show that the errors had [only] some . . . effect on the outcome of the proceeding." *Id.* (alteration and omission in original) (citation omitted). "Rather, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (alteration in original) (citation omitted).

With these standards in mind, we turn to Clark's particular claims. Clark's first argument focuses on the State's fingerprint expert, Richard Crivello. Crivello compared a known print for Clark with the latent print that police had obtained from the Applebee's kitchen. At trial, the prosecutor asked Crivello this question: "Is there any doubt in your mind that the latent print [from Applebee's] belongs to the defendant, Cletio Clark?" Crivello responded, "I have no doubt that whoever made that latent print made the known impressions of Mr. Clark."

On appeal, Clark claims that "[w]hen discussing non-DNA evidence, even expert witnesses are not allowed to state their conclusions with absolute certainty." So Clark claims his counsel was ineffective for failing to object.

We disagree. Although Clark claims "[a]n experienced trial attorney should know" that experts cannot testify to "an absolute certainty," he has not cited—and we have not found—any Iowa authority to support his position. Indeed, we can

think of no meritorious objection to the prosecutor's question or Crivello's answer. "[C]ounsel has no duty to raise issues that have no merit." *State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009).

We turn next to Clark's arguments about the "golden rule." "A 'golden rule' argument is where counsel asks the jurors to put themselves in the place of a party or victim." *State v. Ayabarreno*, No. 13-0582, 2014 WL 465761, at *4 (Iowa Ct. App. Feb. 5, 2014). "Courts frown upon this type of appeal to the emotions or personal interests of the jurors." *Id.*

Clark claims his counsel was ineffective for failing to object to various "golden rule" arguments by the State. First, during opening statements, the prosecutor said:

> Mr. Alcazar will tell you that he was concerned for his own safety. Who wouldn't be? A gun in your face, a gun in your back, you'd be terrified, much unlike [a prospective juror who was later excused], who sat there [during jury selection] and told you you wouldn't be. You would be terrified.

Second, during rebuttal, the prosecutor said:

> The defendant had the gun on Mr. Alcazar for almost six minutes. If I didn't want to take up more of your time, I'd make you sit here for six minutes and think to yourself, "How would I feel if I had a gun pointed at me, pointed at my face for six minutes?" Miles told you he was scared to death. And I guarantee you that if the gun was pointed at you for six minutes, you would be too.

Finally, at the end of rebuttal, the prosecutor said:

> Now, as far as whether or not the Defendant did all of this and instilled fear or threatened Miles Alcazar with a risk of serious bodily injury, I've said it several times today, it's important to the case, use your common sense. I asked [a prospective juror who was later excused] during jury selection, "Would you be afraid if somebody put a gun in your face?" She was the only one in the room that said no. The rest of you, you didn't raise your hand; so I assume that means that you'd be terrified if somebody put a gun in your face. Miles

Alcazar testified he was scared to death. The gun was in his face; the gun was pointed at him for almost six minutes. . . . Use your common sense. You'd be terrified, you'd be scared to death if somebody put a gun in your face for six minutes and told you, "Tell me where the money's at."

In analyzing this claim, we focus first on the question of prejudice. If a defendant fails to show *Strickland* prejudice, it is not necessary for the court to consider whether counsel breached an essential duty. *King v. State*, 797 N.W.2d 565, 574 (Iowa 2011) ("In this case, however, it is not necessary to decide the issue of whether King's counsel provided inadequate assistance because, upon our review of the entire record, we conclude that King has failed to show prejudice as required under the *Strickland* test.").

Like the State, we believe the alleged "golden rule" statements all related to an issue that "[n]o one seriously disputed" at trial, namely, "that the robber made Alcazar fear immediate serious injury." Instead, the real fighting issue at trial was identity: *Who* robbed the Applebee's? And the evidence of Clark's guilt was very strong. So we conclude Clark has not shown there was a "reasonable probability the outcome of the trial would have been different" if counsel would have objected to the alleged-"golden rule" statements. *See Graves*, 668 N.W.2d at 870. And without that showing of prejudice, Clark can obtain no relief.

### C. Clark's supplemental pro se brief

Finally, we address whether we may consider Clark's pro se brief. Clark's trial counsel filed Clark's notice of appeal on April 11, 2019. Clark's appellate counsel filed Clark's proof brief on August 31. Then Clark filed a supplemental pro se brief on September 18. The State moved to strike the supplemental pro se brief, citing Iowa Code section 814.6A(1) (2020), which provides, "A defendant who

is currently represented by counsel shall not file any pro se document, including a brief, reply brief, or motion, in any Iowa court. The court shall not consider, and opposing counsel shall not respond to, such pro se filings." Our supreme court ordered the matter to be considered with this appeal.

Iowa Code section 814.6A(1) was enacted in 2019. *See* 2019 Iowa Acts ch. 140, § 30. It was part of an omnibus crime bill that modified several aspects of criminal-justice process. *See id.* In *State v. Macke*, our supreme court addressed the bill's provisions relating to ineffective-assistance claims and appeals from guilty pleas. 933 N.W.2d 226, 235 (Iowa 2019). *Macke* held those provisions would not apply to cases in which judgment was entered prior to the bill's effective date. *Id.* at 227–28. Relying on the reasoning in *Macke*, we previously held we could consider a supplemental pro se brief when the appeal was pending prior to July 1, 2019. *See State v. Purk*, No. 18-0208, 2019 WL 5790875, at *7 n.8 (Iowa Ct. App. Nov. 6, 2019). So, because this appeal was pending prior to July 1, we believe we may consider Clark's pro se brief.

Even so, the issues raised in Clark's pro se brief are either not preserved, already addressed by counsel's brief, or not sufficiently developed for our review. So none of Clark's pro se claims warrant discussion beyond our discussion of claims brought by counsel.

**IV. Conclusion**

Because Clark has not shown grounds for reversal, we affirm.

**AFFIRMED.**