# IN THE COURT OF APPEALS OF IOWA

No. 24-0798
Filed December 3, 2025

**DAVID LEE LEVY JR.,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Scott County, Joel W. Barrows,

Judge.


        The applicant appeals the denial of postconviction relief.  **AFFIRMED.**


        Stuart G. Hoover of Alliance Law Firm, East Dubuque, Illinois, for appellant.

        Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney

General, for appellee.


        Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**TABOR, Chief Judge.**

"[T]he people in the gallery aren't deciding [David] Levy's fate, the jury is." So reasoned defense counsel when he did not object to the prosecutor's request to close the courtroom during the testimony of a State's witness. Levy contended in a postconviction-relief (PCR) application that counsel's omission was ineffective assistance. Levy also argued his counsel should have objected when the State called him "dishonest" in its closing rebuttal argument. The PCR court rejected those arguments, leaving undisturbed Levy's convictions for second-degree murder and felon in possession of a firearm. Levy appeals. Because neither claim warrants relief, we affirm the denial of his PCR application.

I.     **Facts and Prior Proceedings**

In February 2017, Davenport police responded to a 911 call of shots fired and found Lasabian Walker with fatal gunshot wounds. *State v. Levy*, No. 18-0511, 2020 WL 567696, at *2–4 (Iowa Ct. App. Feb. 5, 2020). At the scene, Walker's fiancée, Cassila Battie, was "frantic" and screaming "David did it." *Id.* Walker and Battie were outside Levy's mother's house when a fight broke out. Witness Shallum Davenport, a friend of Walker and Battie, claimed that Levy pulled a handgun and as Walker tried to disarm him, Levy shot Walker five times. *Id*.

Battie corroborated parts of Davenport's account, describing an argument over stolen items that led to a confrontation. She said Levy pointed a gun at her, and Walker intervened but was shot several times. Levy, asserting a justification defense, claimed that Walker and Davenport attacked him and that the gun discharged accidentally during the struggle. Levy testified that he did not know how many shots were fired and denied hiding the gun.

The State charged Levy with murder in the first degree. But the jury found him guilty of murder in the second degree, as well as being a felon in possession of a firearm. Our court affirmed his convictions on direct appeal. *See id.* at *10.

Levy then applied for PCR, contending his trial attorney was ineffective for not challenging the judge's decision to close the courtroom during part of Davenport's testimony and not objecting when the prosecutor questioned his honesty in the rebuttal closing argument. The PCR court denied relief, and Levy appeals.

## II.     Standard and Scope of Review

Because Levy's ineffective-assistance claim is based on a constitutional right, our review is de novo. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). To succeed, he must show counsel's deficient performance and prejudice. *See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Both elements must be proven by a preponderance of the evidence." *Id.* If an ineffective-assistance-of-counsel claim fails on either prong, "it can be decided on that ground alone." *Id.*

On the duty prong, Levy must show that his defense counsel "performed below the standard demanded of a reasonably competent attorney" as measured "against 'prevailing professional norms.'" *See id.* (citation omitted). We presume counsel performed their duties with competence and "avoid second-guessing and hindsight." *Id.* Moreover, counsel's mistakes of judgment or miscalculated trial strategies generally do not establish ineffective assistance. *Id.* at 143.

To prove prejudice, Levy "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Our confidence in the verdict is shaken when the applicant shows that absent the unprofessional error, the jury "would have had a reasonable doubt respecting guilt." *Id.* at 695.

## III. Discussion

### A. Closure of the Courtroom

Levy's first claim of ineffective assistance is that trial counsel should have objected to the State's request to close the courtroom during part of Davenport's testimony. When Davenport first came to the witness stand, the prosecutor was surprised to find he was reluctant to testify. Davenport claimed he didn't recognize the shooting victim in a photograph from the autopsy, didn't know that Walker was dead, and couldn't remember telling police that he saw Levy pull out a handgun. The prosecutor asked for a recess. After reconvening outside the jury's presence, the prosecutor reported that Davenport received a threat the night before his testimony.

The State moved to close the courtroom so Davenport could testify to that event. Defense counsel asked the State to make a record verifying that the threat occurred but said he wasn't sure "what the next step" would be.

After the judge closed the courtroom, Davenport denied disclosing any threats to the prosecutor. So the parties discussed refreshing Davenport's recollection with his recorded police interview or admitting the recording rather than close the courtroom for his testimony. After a recess, Davenport was willing to explain the threat in the closed courtroom. Defense counsel did not object.

Davenport reported that his paramour received a call warning her that somebody was in the courtroom "waiting for me to do what I was supposed to do" and was "going to kill me and attack my family." The State requested that the courtroom remain closed during Davenport's testimony. Defense counsel questioned whether the vagueness of the threat justified closure but conceded, "I don't know that we're in a position to resist . . . ." The court ordered the courtroom closed for the remainder of Davenport's testimony, which concluded later that day.

Two days later, the State again asked for the courtroom to be closed after a juror reported an incident in the courthouse parking lot. The juror heard an unknown man say, "find [unintelligible] innocent." The juror heard the man say it three times, but the "wind blew away a name." She also described another incident where a male voice was being disruptive in the hallway. The juror testified it did not make her scared, only "[a]ware." No other juror reported being approached or hearing anything. This time, defense counsel resisted the closure. The State withdrew its request, and the trial proceeded open to the public.

Both the Sixth Amendment and article I, section 10 of the Iowa Constitution provide a criminal defendant with the right to a public trial, which means one that is "open to all who care to observe." *State v. Brimmer*, 983 N.W.2d 247, 260 (Iowa 2022) (citation omitted). But that right "may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller v. Georgia*, 467

U.S. 39, 45 (1984). When considering restrictions on the right to a public trial, courts generally assess those circumstances under the four-part *Waller* test.[1]

Levy faults the trial court and the PCR court for failing to apply the *Waller* test and his trial counsel for failing to object to the closure. He argues the circumstances did not meet the four factors and that *Waller* does not require a showing of prejudice to prevail.

Deprivation of the right to a public trial is structural error—unamenable to a harmless-error analysis. *See Brimmer*, 983 N.W.2d at 270. But applicants raising an unpreserved public-trial violation through an ineffective-assistance-of-counsel claim must prove prejudice under *Strickland*. *Sothman v. State*, 967 N.W.2d 512, 531 (Iowa 2021) (following *Weaver v. Massachusetts*, 582 U.S. 286, 300–01 (2017) ("[N]ot every public-trial violation will in fact lead to a fundamentally unfair trial. . . . Thus, when a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically." (cleaned up)). Levy must show either a reasonable probability of a different outcome in his case or that the violation was so serious that it rendered his trial fundamentally unfair. *See Weaver*, 582 U.S. at 301.

The PCR court found that it could not

see how Mr. Levy was prejudiced by any failure to object to the courtroom closing by his counsel. In reviewing the transcripts, there were clearly issues of witness intimidation. The court was within its right to close the courtroom. Levy has failed to establish any prejudice that resulted to him in this regard.

---

[1] The *Waller* test requires that: 1. The party seeking closure identifies "an overriding interest that is likely to be prejudiced;" 2. The closure is "no broader than necessary to protect that interest;" 3. The trial court "consider[s] reasonable alternatives to closing the proceeding;" and 4. The trial court "make[s] findings adequate to support the closure." 467 U.S. at 48 (cleaned up).

Relying on an incomplete reading of *Waller*, Levy fails to argue that he was prejudiced by the closure of the courtroom for Davenport's testimony. So we could decide the matter on prejudice.

But from our de novo review, we also find defense counsel performed competently. At the PCR hearing, Levy offered his attorney's deposition. Counsel testified he didn't object to the State's first request to close the courtroom because he "liked the testimony coming in from [Davenport]," which he found to be "all over the place" and "emotionless." He preferred Davenport's performance in the closed courtroom to admission of the recorded police interview, which he couldn't cross-examine. Counsel also believed that the interview would have been more compelling and credible to the jury—thus, more detrimental to Levy. Defense counsel made a classic "tactical judgment" based on a "thorough investigation" and "plausible options" and exercised "reasonable professional judgment[]" in not opposing the limited closure during Davenport's testimony. *See Ledezma*, 626 N.W.2d at 143. Such decisions do not rise to ineffectiveness assistance. *See Smith v. State*, 7 N.W.3d 723, 726 (Iowa 2024). What's more, counsel successfully resisted the State's second request to close the courtroom for the remainder of the trial after the juror's report of possible intimidation. When we consider his overall representation, we find counsel offered Levy effective assistance.

## B. Closing Argument Objections

During rebuttal closing argument, the prosecutor attacked Levy's credibility when testifying about his justification defense:

> What [Levy] claims happened in that van is ridiculous. It's not believable. What [Battie] and [Davenport] testified about what

happened, that's what is corroborated and backed up by the evidence. It isn't about what happened in that van. [Levy] didn't pull out the gun in that van. It's about what happened in that yard. . . .

. . . .

They brought up Instruction Number 8, witness credibility. And, most importantly, it is not the only instruction that tells you and encourages you to use your reason, common sense and experience. They want to nitpick [Battie's] inconsistencies and have you believe that she is being dishonest, she is the dishonest one, that you can't believe anything that she said. . . .

But you do not get any more dishonest than saying you don't even know Lasabian Walker, that you don't even know Shallum Davenport. You don't get any more dishonest or inconsistent by saying over twenty times in a matter of an hour interview that you don't know nothing and that you didn't see nothing.

. . . .

You don't get any more dishonest or inconsistent by saying I never seen that gun. I don't play with guns. . . . You don't get any more dishonest or inconsistent than that. And he wants you to believe what he says about what happened in that yard or in that van? He wants you to believe that it was self-defense?

You can't believe anything that he says. And there is a big difference between saying that you don't know nothing or you didn't see nothing like he did plenty of times and making stuff up. And that's exactly what [Levy] did. He did it with Detective Thomas in that interview and he did it on Friday when he testified.

Defense counsel did not object to any of the prosecutor's statements about his dishonesty, which Levy argues amounted to prosecutorial misconduct.

"[T[o establish a due process violation based upon prosecutorial misconduct, the defendant must first establish proof of misconduct." *State v. Musser*, 721 N.W.2d 734, 754 (Iowa 2006). "[I]t is improper for a prosecutor to call the defendant a liar, to state the defendant is lying, or to make similar disparaging comments." *State v. Graves*, 668 N.W.2d 860, 876 (Iowa 2003). And while "[a] prosecutor is entitled to some latitude during closing argument in analyzing the evidence" and arguing "reasonable inferences and conclusions to be drawn," the prosecutor may not "express his or her personal beliefs," "vouch" for a witness, or

"make inflammatory or prejudicial statements regarding a defendant." *Id.* at 874 (cleaned up).

The PCR court found counsel did not have a duty to object to the rebuttal closing because "the State may attack the defendant's credibility if he has admitted dishonesty." The court cited *State v. Carey*, where the supreme court reiterated the *Graves* factors for determining whether prosecutor closing statements violate the defendant's right to a fair trial:

> [M]isconduct does not reside in the fact that the prosecution attempts to tarnish defendant's credibility or boost that of the State's witnesses; such tactics are not only proper, but part of the prosecutor's duty. Instead, misconduct occurs when the prosecutor seeks this end through unnecessary and overinflammatory means that go outside the record or threaten to improperly incite the passions of the jury.
> In determining whether the prosecutor's statements to the jury employed such means, and therefore constituted misconduct, the court should consider three factors:
>> (1) Could one legitimately infer from the evidence that the defendant lied? (2) Were the prosecutor's statements that the defendant lied conveyed to the jury as the prosecutor's personal opinion of the defendant's credibility, or was such argument related to specific evidence that tended to show the defendant had been untruthful? and (3) Was the argument made in a professional manner, or did it unfairly disparage the defendant and tend to cause the jury to decide the case based on emotion rather than upon a dispassionate review of the evidence?

709 N.W.2d 547, 556–57 (Iowa 2006) (internal citation omitted) (quoting *Graves*, 668 N.W.2d at 874–75).

Defense counsel testified, "If I felt like she was attacking my client . . . I would have objected." To him, "it seemed more like . . . she was comparing and contrasting" Levy's police interview with his trial testimony to illustrate "he was either dishonest then or dishonest now." Counsel didn't view the statements as

disparaging of Levy's character but commenting on his conduct. Finally, he believed the comments "unfortunately . . . were valid points" because Levy's justification defense depended on the credibility of all the witnesses and defense counsel had spent considerable time attacking Battie's inconsistencies and credibility.

We agree with defense counsel's perceptions. An objection would have been meritless, so counsel did not fail in an essential duty. *See Ruiz v. State*, 18 N.W.3d 453, 459 (Iowa 2025). "[W]hen a case turns on which of two conflicting stories is true," the prosecutor is permitted to argue that "certain testimony is not believable." *Graves*, 668 N.W.2d at 876 (citation omitted). Levy's testimony asserting justification conflicted with the more consistent and mutually corroborating narratives of Battie and Davenport. Levy's counsel exploited inconsistencies within Battie's testimony to undermine her credibility, and the prosecutor was entitled to respond with a critique of Levy's version of events. The prosecutor did not express her personal opinion. Rather, the prosecutor asked the jury to follow its instructions—using its reason, common sense, and experience— to infer Levy's version was untrue, a legitimate inference to draw from the evidence. And despite the prosecutor's vehement language, the rebuttal did not cross the line into an unprofessional statement. An objection from defense counsel would have been meritless, so Levy has not shown counsel was ineffective. We affirm the PCR court's denial of relief.

**AFFIRMED.**